UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

SOUTHWESTERN BELL TELEPHONE      )
COMPANY d/b/a AT&T MISSOURI,     )
                                 )
        Plaintiff,               )
                                 )
    vs.                          )        Case No. 4:09-CV-871 (CEJ)
                                 )
ROBERT M. CLAYTON, III, et al.,  )
                                 )
        Defendants.              )

## MEMORANDUM

Southwestern Bell Telephone Company, d/b/a AT&T Missouri,[1] seeks review of an arbitration decision by the Missouri Public Service Commission (MPSC) extending an interconnection agreement between plaintiff and defendants Sprint Communications Company L.P., Sprint Spectrum L.P., and Nextel West Corp. (collectively, Sprint).[2] Plaintiff asserts that the MPSC exceeded its jurisdiction under the Telecommunications Act of 1996 and seeks an order directing the defendant Commissioners[3] to vacate their arbitration decision. The parties have fully briefed the relevant issues and the matter is ready for disposition.

### I.    Background

---

[1]AT&T Missouri is an indirect wholly owned subsidiary of AT&T Inc. and is an Incumbent Local Exchange Carrier (ILEC) under the Telecommunications Act.

[2]Sprint Communications Company L.P. is authorized to provide competitive local exchange services in Missouri; Sprint Spectrum L.P. and Nextel West Corp. provide commercial mobile radio service in Missouri. They are Competing Local Exchange Carriers (CLECs) under the Telecommunications Act.

[3]Commissioners Robert M. Clayton, III, Jeff Davis, Terry M. Jarrett, and Kevin Gunn are named as defendants in their official capacity and not as individuals.

In 2006, AT&T Inc. merged with BellSouth Corporation.  To obtain approval of the merger from the Federal Communications Commission (FCC), AT&T/BellSouth made a number of commitments regarding the obligations of its ILEC subsidiary companies to enter into agreements with the CLECs.  <u>Michigan Bell Tel. Co. v. Isiogu</u>, 2010 WL 746377, *1 (E.D. Mich. Mar. 2, 2010).  Merger Commitment 7.1 provides that AT&T/BellSouth will allow a CLEC to opt into an effective interconnection agreement from any state in its 22-state operating territory.   <u>In the Matter of AT&T Inc. & BellSouth Corp. Application for Transfer of Control</u>, (WC Docket No. 06-74) 22 F.C.C.R. 5662, 5809-10, 2007 WL 1296996 (2007).  Merger Commitment 7.4 provides that AT&T/BellSouth will allow a CLEC "to extend its current interconnection agreement, regardless of whether its initial term has expired, for a period of up to three years, subject to amendment to reflect prior and future changes of law."  <u>Id.</u>

The preamble to the Merger Commitments includes the following "savings clause":

> It is not the intent of these commitments to restrict, supersede, or otherwise alter state or local jurisdiction under the Communications Act of 1934, as amended, or over the matters addressed in these commitments, or to limit the state authority to adopt rules, regulations, performance monitoring programs, or other policies that are not inconsistent with these commitments.

<u>Id.</u> at 5807.

AT&T Missouri and the Sprint defendants have been operating under interconnection agreements for several years.  Final Arbitrator's Report ¶¶28-30.[4]  On August 21, 2007, AT&T Missouri notified Sprint that it wished to terminate the agreements.  <u>Id.</u> ¶37.  In November 2007, Sprint invoked Merger Commitment 7.1 and sought to "port" into Missouri an interconnection agreement between AT&T Inc. and

---

[4]Pl. Reply Brief, Att. 2 [Doc. 34-2].

a Sprint affiliate in Kentucky.[5] Id. ¶49.  When AT&T Missouri resisted the effort, Sprint

filed a complaint with the MPSC seeking enforcement of Merger Commitment 7.1. Id.

¶50.  AT&T Missouri moved to dismiss the petition, arguing that the FCC had retained

exclusive jurisdiction over the Merger Commitments.[6]   Staff's Brief Regarding

Jurisdiction ¶6.   The Commission staff noted that Sprint's complaint did not ask the

MPSC to interpret or enforce any provision from its existing commission-approved

interconnection agreement with AT&T Missouri.  As a consequence, the MPSC did not

have authority under §§ 251 and 252 to hear the complaint. Id. ¶25. The Commission

staff also noted, however, that a state commission has authority under §§ 251 and 252

to arbitrate and approve interconnection agreements and to interpret and enforce

those agreements.  "That authority is not restricted by the Merger Commitments." Id.

¶32.  The staff further explained that:

> Sprint did have a remedy available at the Commission when its negotiations with
> AT&T Missouri were unsuccessful.  Sprint could have petitioned the Commission
> to arbitrate any unresolved issues concerning state-specific pricing and
> performance plans and technical feasibility.  In fact, Sprint did petition the
> Kentucky Public Service Commission to arbitrate another Merger Condition – one
> allowing a carrier to extend its current interconnection agreement for a period
> up to three years.

Id. ¶33.  The Commission dismissed Sprint's petition on June 24, 2008.

Following the dismissal of its petition, Sprint submitted a request to AT&T

Missouri to negotiate an interconnection agreement using the Kentucky agreement as

the starting point for §§ 251 and 252 negotiations.  Order Denying Motion to Dismiss

---

[5]On November 7, 2007, the Kentucky Public Service Commission extended the
interconnection agreement between Sprint and AT&T for three years from December
29, 2006. MPSC Staff's Brief Regarding Jurisdiction ¶12 Sprint's Tr. Br., Ex. 1 [Doc.
#32-1].

[6]AT&T Missouri does not assert before this Court that the FCC has exclusive
jurisdiction over enforcement of the Merger Commitments.

at 2.[7]  AT&T Missouri rejected Sprint's request and proposed alternatives, including the use of the Missouri-approved interconnection agreement as a starting point.  Id. at 3.  After several starting point offers were exchanged, Sprint notified AT&T Missouri that it was electing to extend its current Missouri-approved interconnection agreements for three years under Merger Commitment 7.4  Id.  AT&T Missouri rejected the request and Sprint filed a petition for arbitration, presenting as its sole question whether it should be allowed to extend its current Missouri interconnection agreements for three years under the Merger Commitment.  Id.

AT&T Missouri moved to dismiss, arguing that the length of the contract is not enumerated in § 251 as one of the ILEC's duties of interconnection.  Thus, AT&T Missouri argued, the MPSC lacked jurisdiction to arbitrate the issue.  The MPSC rejected the argument, stating that:

> Simply because the length of the contract is not enumerated in Section 251 as a substantive issue does not mean that the Commission has no jurisdiction. Section 251 states that the ILEC has a duty to negotiate "the particular terms and conditions of agreements **to fulfill** the duties [under the Act]."  As Sprint argues, the term of the agreement is a "term and condition" that is necessary for AT&T to fulfill its Section 251 duties. . . The terms of the FCC Merger Order are not relevant to the Commission's decision regarding the motion to dismiss this arbitration for lack of jurisdiction.  The Merger Order only comes into play in determining what terms should be contained in a lawful and non-discriminatory interconnection agreement.

Id. at 5-6 (emphasis in original).  The arbitrator found that a three-year extension of the interconnection agreement was appropriate under § 251 and § 252.  Final Arbitrator's Report  ¶¶ 57-58.  The MPSC adopted the Final Arbitrator's Report and

---

[7]Pl. Initial Brief, Att. 3 [Doc. 30-3].

ordered the parties to file a conforming interconnection agreement.  Order Denying
Application for Reconsideration and Adopting Final Arbitrator's Report.[8]

In this action, AT&T Missouri moves to vacate the arbitration order, arguing that
the Telecommunications Act expressly identifies the matters that a state commission
may arbitrate; AT&T Missouri's obligation to extend the interconnection agreement
under Merger Commitment 7.4 is not one of those matters; and therefore the MPSC
lacked authority to arbitrate Sprint's request to extend the interconnection agreement
under Merger Commitment 7.4.  Defendants counter that, under § 251(c)(1), AT&T
Missouri had a duty to negotiate "the terms and conditions" of an interconnection
agreement, including its duration, and that the duration was an unresolved issue that
the MPSC has authority to arbitrate under § 252(b)(1).  Defendants assert that the fact
that the MPSC looked to Merger Commitment 7.4 in determining the length of the
extension does not mean that the MPSC arbitrated the Merger Commitment.

## II.    Standard of Review

A party aggrieved by a determination of a state commission may seek judicial
review to determine whether the decision meets the requirements of § 251.  47 U.S.C.
§ 252(e)(6).  The Court reviews the MPSC's interpretation and application of federal
law *de novo*.  Ace Tel. Ass'n v. Koppendrayer, 432 F.3d 876, 878 (8th Cir. 2005).  In
deference to the state commission's superior technical expertise, federal courts review
commissions' factual determinations under the arbitrary and capricious standard.  Id.
The scope of review under the arbitrary and capricious standard is narrow and does not
permit a court to substitute its judgment for that of the agency.  Qwest Corp. v. Boyle,
589 F.3d 985, 991 (8th Cir. 2009).

_____

[8]Pl. Initial Brief, Att. 4 [Doc. 30-4].

-5-

### III.   Discussion

For most of its history, "local phone service was thought to be a natural monopoly." Qwest Corp. v. Public Utilities Comm'n of Colorado, 479 F.3d 1184, 1186 (10th Cir. 2007) (quoting AT& Corp. v. Iowa Utils. Bd., 525 U.S. 366, 371 (1999)). States alone regulated the industry, "seeking to ensure that each local monopolist provided adequate service at reasonable prices." Id.  In 1996, Congress passed the Telecommunications Act of 1996, 47 U.S.C. §§ 251 *et seq.*, to foster competition in local and long distance telephone markets by neutralizing the competitive advantage inherent in incumbent carriers' ownership of the physical networks required to supply telecommunication services. Pacific Bell v. Pac-West Telecomm, Inc., 325 F.3d 1114, 1118 (9th Cir. 2003).  "[I]ncumbent LEC's are subject to a host of duties intended to facilitate market entry.  Foremost among these duties is the LEC's obligation under 47 U.S.C. § 251(c) to share its network with competitors." Iowa Utils. Bd., 525 U.S. at 371.

#### Applicable statutory provisions

The following sections of the Act are at issue in this case:

Section 251(b) of the Act lists the obligations of all local exchange carriers, whether incumbent or competitor.   These obligations relate to:  resale of telecommunications services; number portability; dialing parity; access to right-of-ways; and reciprocal compensation.  47 U.S.C. § 251(b)(1)-(5)).

Section 251(c) addresses additional obligations imposed on the ILECs.  The first of these is the duty to "negotiate in good faith in accordance with section 252 of this title the particular terms and conditions of agreements to fulfill the duties described in paragraphs (1) through (5) of subsection (b) of this section and this subsection." §

251(c)(1).  ILECs are also obligated to provide, in relevant part, "interconnection with the local exchange carrier's network . . . on rates, terms, and conditions that are just, reasonable, and nondiscriminatory, in accordance with the terms and conditions of the agreement and the requirements of [§ 251 and § 252]." § 252(c)(2)(D).

The procedures for negotiation and arbitration are set forth in § 252.  Upon receiving a request for an agreement pursuant to the duties listed in § 251, an ILEC may enter into voluntary negotiations with the requesting carrier.   § 252(a)(1). Alternatively, an interconnection agreement can be reached through compulsory arbitration.[9]  § 252 (b).

Compulsory arbitration under § 252 begins with a request by a CLEC to negotiate with an ILEC regarding its obligations under § 251.  Coserv Ltd. Liability Corp. v. Southwestern Bell Tel. Co., 350 F.3d 482, 487 (5th Cir. 2003).  An ILEC is required to negotiate about the duties listed in § 251(b) and (c), but the parties are free to include interconnection issues that are not listed in § 251(b) and (c).   § 252(a)(1) (ILEC receiving request for interconnection "may negotiate and enter into a binding agreement with the requesting . . . carrier . .  without regard to the standards set forth in [§ 251] b and c.").  If voluntary negotiations result in only a partial agreement or no agreement at all, either party can petition for compulsory arbitration of any open issue.  Coserv, 350 F.3d at 487.  Where the parties have

---

[9]The compulsory arbitration clause provides that:

During the period from the 135th to the 160th day (inclusive) after the date on which an incumbent local exchange carrier receives a request for negotiation under this section, the carrier or any other party to the negotiation may petition a State commission to arbitrate any open issues.

47 U.S.C. § 252(b).  There is no contention that Sprint's petition to arbitrate was untimely.

voluntarily included in their negotiations issues other than those required by § 251(b)

and (c), the additional issues are subject to compulsory arbitration under § 252(b)(1).

Id.

The statute directs that, in resolving an arbitration of open issues and imposing

conditions on the parties to interconnection agreements, the State commission shall:

> (1) ensure that such resolution and conditions meet the requirements of section 251 of this title, including the regulations prescribed by the Commission pursuant to section 251 of this title;
>
> (2) establish any rates for interconnection, services, or network elements according to subsection (d) of this section; and
>
> (3) provide a schedule for implementation of the terms and conditions by the parties to the agreement.

47 U.S.C. § 252(c).

### Was extension an "open issue" the parties negotiated?

AT&T argues that Sprint decided to forego arbitration on the pending issues in

the parties' negotiations and merely invoked Merger Commitment 7.4 to extend the

existing agreement.  By taking this course, AT&T Missouri contends, Sprint bypassed

a number of outstanding issues that otherwise would have been subject to arbitration.

AT&T asserts that the MPSC's action amounted to enforcement of Merger Commitment

7.4, rather than arbitration of an interconnection agreement.  Defendants contend that

the extension of the existing agreements under Merger Commitment 7.4 was an open

issue in the parties' negotiations.

In November 2007, Sprint invoked Merger Commitment 7.1 to attempt to port

the Kentucky interconnection agreement into Missouri.  When AT&T Missouri refused

the request, Sprint filed a complaint with the Commission, which dismissed the

complaint.  Final Arbitrator's Report   ¶¶ 49-51. On June 30, 2008, Sprint sent a

request for negotiations under the Act and asked that the Kentucky agreement be used as a starting point for negotiations. AT&T Missouri rejected the request on July 16, 2008. At that time, AT&T Missouri stated that, "[G]iven that the parties will be negotiating under Section 252 of the Act, each party is free to offer any language and take any position it sees fit subject to its statutory duty to negotiate in good faith." ¶ 58. AT&T Missouri then proposed that the parties use its template agreement as the starting point for negotiations; alternatively, AT&T Missouri stated that it was willing to use the existing Missouri interconnection agreements as the starting point for negotiations in accordance with Merger Commitment 7.3.[10] The parties ultimately decided to use the Kentucky agreement as the starting point, but were unable to finalize an agreement. Id. ¶¶ 53-60. During the negotiations, Sprint raised the possibility of extending the existing agreements under Merger Commitment 7.4. AT&T Missouri took the position that the agreements were expired, and it would not extend expired agreements; AT&T Missouri later conceded that the plain language of the commitment supported Sprint's request for extension. Id. ¶¶ 81-82; 103. The Arbitrator found that, "faced with the short remaining duration of [the] agreement, Sprint changed its course late in the negotiation process. It was unlikely, but not unreasonable for Sprint to interject the extension of the Missouri ICAs . . . at this point in the negotiations. . . It would not have made sense to have exchanged red-lined versions of the proposed amendment [to extend the Missouri agreements] because the amendment was entirely rejected by AT&T. Therefore, if exchanged, a redlined amendment would have been entirely struck through." Id. ¶¶ 61-68. Sprint submitted

---

[10]Merger Commitment 7.3 provides that AT&T "shall allow a requesting telecommunications carrier to use its pre-existing interconnection agreement as the starting point for negotiating a new agreement."

the extension as the only issue for arbitration.  AT&T Missouri did not submit any issues or proposed interconnection agreements for consideration in the arbitration process.  Id. ¶¶ 99, 109-10.

The Arbitrator found that the extension of the interconnection agreements under Merger Commitment 7.4 was a negotiated issue under § 251 and § 252 of the Act.  Id. ¶ 30.  The MPSC's factual determinations satisfy the "arbitrary and capricious" standard.  Furthermore, the Court finds on *de novo* review that the MPSC correctly concluded that Sprint's request to extend the existing agreements under Merger Commitment 7.4 was an open issue appropriate for arbitration.  AT&T Missouri's complaint regarding the scope of the arbitration is unavailing: AT&T Missouri decided not to submit issues or proposed interconnection agreements for arbitration and cannot now be heard to complain that the process was unfairly limited to the sole issue of the extension.

### The MPSC's Authority to Arbitrate the Merger Commitments

AT&T Missouri contends that the MPSC's authority to arbitrate is limited to those issues that the ILEC is required under § 251(c) to negotiate and that the Merger Commitments fall outside the scope.  Section § 252(c), which sets forth the standards for arbitration, requires state commissions to ensure that interconnection agreements "meet the requirements of section 251" and "provide a schedule for implementation of the terms and conditions by the parties to the agreement."  Section 251(c)(1) requires ILECs to negotiate the "particular terms and conditions" of the agreements required to fulfill the duties enumerated in § 251(b) (*e.g.*, number portability, dialing parity, etc.) and in §251(c); section 251(c)(2) requires the ILECs to provide interconnection "on rates, terms, and conditions that are just, reasonable, and

nondiscriminatory, in accordance with the terms of the agreement." AT&T Missouri concedes that the duration of an interconnection agreement is among the terms and conditions it must negotiate under § 251(c); it also concedes that the MPSC has jurisdiction to arbitrate the duration when the negotiating carriers are unable to reach agreement. Thus, AT&T Missouri is incorrect when it suggests that the language of the statute precludes the MPSC's arbitration of the extension of the parties' interconnection agreements.

Nonetheless, AT&T Missouri argues that the MPSC exceeded its authority, relying on Qwest Corp. v. Arizona Corp. Comm'n, 567 F.3d 1109 (9th Cir. 2009), and Southwestern Bell Tel., L.P. v. Missouri Pub. Serv. Comm'n, 461 F. Supp.2d 1055 (E.D. Mo. 2006). These cases involved attempts by state commissions to arbitrate obligations arising under § 271, which governs the terms under which the former monopoly carriers can provide long-distance services. Qwest, 567 F.3d at 1111. As the courts noted, § 271 explicitly gives the FCC exclusive jurisdiction over enforcement and thus the state commissions had no authority to arbitrate § 271 issues. In this instance, however, there is no contention that the FCC retained exclusive jurisdiction over enforcement of the Merger Commitments and thus the cited cases are inapposite.

The issue of a state commission's authority to arbitrate an extension under Merger Commitment 7.4 was recently decided by the U.S. District Court for the Eastern District of Michigan. Michigan Bell Tel. Co. d/b/a AT&T Michigan v. Isiogu, No. 09-12577, 2010 WL 746377 (E.D. Mich. Mar. 2, 2010). As in this case, Sprint filed a petition for arbitration of the extension of its existing agreements under Merger Commitment 7.4. Id. at *4. The Michigan Commission found in favor of Sprint and ordered extension. Id. at *3. AT&T Michigan filed suit, arguing as AT&T Missouri does

-11-

here that the Commission lacked authority to interpret and enforce the Merger

Commitments through arbitration proceedings.  Id. at *5.  The district court rejected

AT&T's argument, stating:

> [T]he merger commitment invoked by Sprint Nextel and the MPSC's arbitral
> authority are not as conceptually distinct as AT&T Michigan's argument makes
> them appear.  Merger commitment 7.4 does not address issues and topics
> separate and apart from those subject to arbitration under the 1996 Act; to the
> contrary, it directly impacts the obligations of AT&T subsidiaries to enter into
> specific [interconnection agreements] previously negotiated under § 251 of the
> 1996 Act. . . . Although [the Merger Commitment] "savings clause"[11] does
> nothing to expand the MPSC's authority, it does make clear that, to the extent
> arbitral issues and the merger commitments overlap, the MPSC retains authority
> to resolve those issues.

Id. at *6.  The court went on to note that, once Sprint invoked Merger Commitment

7.4, the MPSC could not execute its arbitration authority under the 1996 Act without

enforcing the merger commitment.  Id. at *7.

This case is directly on point with the issue raised here and the reasoning is

consistent with the Court's reading of the applicable statutory provisions and the case

law cited by the parties.  And, in BellSouth Telecomm., Inc., d/b/a AT&T North Carolina

v. North Carolina Util. Comm'n, No. 4:09-CV-33-FL at *11 (E.D.N.C. Jan. 26, 2010),[12]

the U.S. District Court for the Eastern District of North Carolina determined that the

state commission had authority to order the ILEC to allow Nextel to opt-in to Sprint's

interconnection agreement under Merger Commitment 7.1.  The North Carolina court

noted, "defendant Commission was correct to assert concurrent jurisdiction to enforce

the merger commitments.  The FCC committed the resolution of opt-in disputes to

---

[11]See quoted provision on page 2.

[12]Sprint's Notice of Supp. Auth. [Doc. 35-1].

state commissions in the first instance, and it made clear that the merger commitments were not intended [to restrict or alter state jurisdiction]".

In summary, the Court concludes that the MPSC did not exceed its authority under § 252 of the Communications Act of 1996 and plaintiff AT&T Missouri is not entitled to the relief it seeks.  Judgment in favor of the defendants will be separately entered.

CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 18th day of January, 2011.